IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JAMES D. DAUGHTY,                          )
                                           )
                    Petitioner,            )
                                           )
        vs.                                )          Case No. 4:04CV00793 ERW (AGF)
                                           )
JAMES PURKETT,                             )
                                           )
                    Respondent.            )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the pro se petition of Missouri state prisoner

James D. Daughty for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The action

was referred to the undersigned Magistrate Judge under 28 U.S.C. § 636(b) for

recommended disposition.  For the reasons set forth below, the Court recommends that

federal habeas relief be denied.

Following a bench trial, Petitioner was found guilty on January 25, 2000, of first

degree murder, armed criminal action, and attempted forcible rape.  He was sentenced on

March 6, 2000, to three consecutive terms of life imprisonment, the term on the murder

charge being without the possibility of probation or parole.  On February 13, 2001,

Petitioner's convictions and sentences were affirmed on direct appeal.  Petitioner filed a

pro se motion for state post-conviction relief filed on August 28, 2001.  Thereafter,

appointed counsel filed an amended motion, which was denied by the motion court.  This

denial was affirmed by the state appellate court on June 24, 2004.

On June 25, 2004, Petitioner filed the present action. He claims that his constitutional rights were violated in the following ways: his oral, written, and videotaped confessions were improperly admitted at trial because they were obtained following his arrest, which Petitioner claims was effected without a warrant, probable cause, exigent circumstances, or compliance with "knock and announce" procedures (Claims I through VI); the police destroyed fingerprint evidence and police notes of his interrogation, despite pending motions by the defense to preserve all such evidence (Claim VII); his confessions were improperly admitted at trial because they were not voluntary, but rather were coerced by the police (Claim VIII); his waiver of a right to a jury trial was involuntary in that it was coerced by his trial attorneys' pressure and promises (Claim IX); and appellate counsel was ineffective for failing to raise on direct appeal a claim that there was insufficient evidence to support Petitioner's convictions (Claim X).

Respondent argues that Petitioner's claims based upon his alleged unconstitutional arrest are not cognizable in this habeas action and that the claims related to the destruction of evidence and insufficiency of the evidence are procedurally barred. Respondent further asserts that the remaining claims (involuntary confession and coerced waiver of the right to a jury trial) fail on the merits.

## BACKGROUND

### Pre-trial Proceedings

On June 21, 1999, the trial court held an evidentiary hearing on Plaintiff's motions to suppress evidence, including oral, written, and videotaped confessions that he made to

the police upon his interrogation following his arrest. Resp. Ex. A1 at 19-191. The arrest was made without a warrant, in Coldwater, Missouri, at approximately 2:30 a.m. on May 24, 1998. Police officers testified as to the investigation that led them to Petitioner. A neighbor of the victim had reported to the police that he had found the victim's decomposing body in her apartment. Officer Donald Lassing, one of the two police officers who interrogated Petitioner at the Desoto, Missouri, police station, where Petitioner was brought after his arrest, described the interrogation. Lassing testified that Petitioner was read his <u>Miranda</u> rights[1] at about 6:30 a.m., before the interrogation began, and that Petitioner initialed each right on the "Advice of Rights" form and then signed the form. Lassing testified that at no time did Petitioner ask for an attorney, or request that the questioning stop. Lassing also testified that neither he, nor anyone else in his presence, made any threats to get Petitioner to sign the form.

Lassing testified that questioning proceeded for about two hours, at which point a break was taken for breakfast. After about two more hours of questioning, and then a lunch break at about noon, Petitioner confessed to the crimes. At about 6:20 p.m., Petitioner signed a written confession, and then made a videotaped confession. The record indicates that the trial court had viewed the videotape. The videotape begins at approximately 7:55 p.m. with Petitioner stating that he had been treated "good" by the police since his arrest, and confirming that he had initialed and signed the Advice of Rights form that morning.

---

[1]    <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Lassing further testified that throughout the day, Petitioner was allowed to eat and rest; Petitioner "repeatedly" had a cigarette and a can of soda; frequent breaks were taken for Petitioner or one of the officers to use the bathroom; and Petitioner was in an office, unhandcuffed, and not in a jail cell. During the interrogation, Petitioner asked if the officers could get him help for his emotional problems.

Petitioner testified at the suppression hearing that before Petitioner confessed, Lassing kept telling him that if he did not make a statement, Lassing would make sure Petitioner never saw his young daughter again, and that Petitioner would end up on death row. Petitioner testified that Lassing lied about the evidence that the police had against Petitioner, stating that they had his fingerprints on the TV and on the wall above Gallagher's head. Although Petitioner knew this could not be true, the threats scared him. Petitioner testified that the officers also promised to get him immediate help for his emotional problems if he made a statement. He testified that during his interrogation he asked for an attorney several times, but that the requests were ignored. On June 23, 1999, the trial court summarily overruled Petitioner's motions to suppress. Resp. Ex. B at 50.

On January 4, 2000, Petitioner signed a written waiver of a jury trial. The waiver stated that it was made voluntarily, that Petitioner understood that he had a right to a trial by jury which only he could waive, and that Petitioner understood that if he were convicted of murder in the first degree, he faced a sentence of life without the possibility of probation or parole. On the same form, the State "announce[d]" that in consideration

of the waiver, it would not seek the death penalty.  Id. at 51.[2]  The case proceeded to trial

before the court on January 18, 2000.

**Evidence at Trial**

The following is a summary of the evidence adduced at trial relevant to the current

claims:  On May 16, 1998, Nathan Boyer returned to his apartment in DeSoto, Missouri,

after being away for two weeks.  After settling in, Boyer noticed a strange smell

emanating from the apartment of his neighbor, Tina Gallagher.  Boyer called the

apartment landlord on May 19, 1998, and asked him to investigate the smell.  Upon

entering the apartment, the landlord found Gallagher's decomposing body.

Boyer ran to the local police station and reported the discovery.  The police came

to the apartment and found Gallagher's body, which was considerably decomposed.  She

was dressed only in a T-shirt, which was pushed up over her breasts.  Her identity was

confirmed by a comparison of tattoos and x-rays.  The medical examiner confirmed that

Gallagher's death was caused by a large cut made across her throat.  The apartment was

dusted for fingerprints, some of which matched Gallagher's.  The other prints were not

complete enough for identification purposes, and so they were thrown away, in

accordance with normal police procedure.  Among the prints, were blood stained prints

on one of the walls in the apartment.  One item of evidence taken from the apartment was

a pair of teal colored underpants which had been cut open along both sides, and which

---

[2]    The record indicates that the trial court held a soliloquy with Petitioner regarding this
waiver (Resp. Ex. K at 68), but the record does not include a transcript of such a session.

were found on the bed in the apartment.

During the search of Gallagher's apartment, law enforcement officers also found an envelope post-marked May 6, 1998, with the name "Jim" and a telephone number written on the outside. The police traced the telephone number to the apartment of Nancy Roderique. Upon questioning Roderique on May 22, 1998, they learned that her son's name was James Daughty (Petitioner). Roderique also told the police that her son, James, drove a gray, mid-sized pickup truck. The description of the truck was consistent with the description of a vehicle one of Gallagher's neighbors told police he had seen parked near Gallagher's apartment building "every now and then," the last time being On May 15, 1998, between about 6:30 and 9:00 p.m. The police told Roderique to have her son contact them.

Later that day, Roderique told Petitioner that the police wanted to speak with him. Petitioner called the police two different times telling them where he could be found, but after responding to these locations, the police were unable to find him. The next day, officers learned from Christopher Bay, Petitioner's friend, that Petitioner could be found in Coldwater, Missouri, camping on wooded property owned by Bay's father. Bay told the police that Petitioner had told him that the police wanted to speak with him about the murder of a girl in Desoto. Petitioner explained that he needed to get away and would call the police the following day.

The officers searched for and found Petitioner asleep in a trailer (also referred to in the record as a camper) on Bay's property at approximately 2:45 a.m. on May 24, 1998.

Petitioner was arrested and transported to the police station in Desoto, about two hours away, where two officers began interviewing him at approximately 6:30 a.m. Petitioner waived his <u>Miranda</u> rights both orally and in writing, and filled out consent-to-search forms for his pickup truck and camper. Initially, Petitioner denied knowing Gallagher, but after he was confronted with information that other witnesses had indicated that he knew her, he admitted that he knew her. Throughout the morning, however, he denied any involvement with her murder. Several breaks were taken during the morning hours for breakfast, soda, and cigarettes. After his noon meal, Petitioner confessed to the murder. During the interrogation, Petitioner twice asked the officers if they would provide help for mental problems he had; both times he was advised that he would have to seek such help on his own. The interrogating officers took notes during the interrogation and prepared a report based upon the notes, following the interrogation.

In his oral statement, Petitioner stated that at approximately 11:15 p.m. on May 14, 1998, he went to Gallagher's residence, where she told him that her ex-boyfriend was abusing her. Petitioner stated that Gallagher began to talk about how men mistreated women, and the two got into a physical confrontation, with Gallagher slapping him in the face. Petitioner then stated that Gallagher retrieved a carving knife from the kitchen and jumped on top of him. He described the struggle that ensued and stated that after he was able to get the knife away from Gallagher, he held her down on the floor, sat on top of her and cut her throat. He stated that he thought he became so enraged at Gallagher due to his past sexual abuse as a child and his dependency on alcohol and drugs. Petitioner

7

stated that he then went to the kitchen, washed off the knife, placed it in a drawer, washed his hands with a washcloth, and left the apartment.

After listening to Petitioner's account, the police asked him to make written and videotaped statements. Petitioner agreed and complied with both requests. The written statement was essentially consistent with the oral statement. The video statement began with Petitioner confirming that he had initialed and signed the Advice of Rights form, and stating that the police had treated him "good" during the interrogation. He began to recount the events as related by him earlier. When he got to the point of being on top of Gallagher on the floor, he stated that he did not want to say any more, and the interview was terminated.

The medical examiner who performed an autopsy upon Gallagher was permitted to testify, over Petitioner's objection, that Gallagher had suffered a probable sexual assault in connection with her death. She based this opinion on the facts that Gallagher was killed in an isolated location, that her assailant was close enough to her to slit her throat, and that when her body was found, she had on only a T-Shirt that was pulled up over her breasts.

Petitioner testified that he met Gallagher only one time, approximately one month prior to May 12, 1998. On May 12, at approximately 4:15 p.m., Gallagher waved him down when he was in his car, and he took her to her apartment so that she could write his phone number down to be able to call him about a mutual friend. He testified that he stayed in the apartment approximately ten or fifteen minutes and never saw Gallagher

again.  Petitioner described his interrogation at the police station consistent with his testimony at the suppression hearing.  He stated that he was treated okay physically, but that the officers "were working" on his mental state.

## Direct Appeal

On direct appeal, Petitioner argued that the trial court erred in (1) overruling his motion to suppress his post-arrest statements, because the police arrested him without a warrant, probable cause, exigent circumstances, or knocking and announcing; (2) overruling his motion to suppress his statements because they were not voluntary in that they were made after being held in custody for nearly 17 hours and after the police made threats and promises to him; and (3) permitting the medical examiner to testify, over Petitioner's objection, that Gallagher had probably been sexually assaulted by her assailant.  Resp. Ex. C.

The Missouri Court of Appeals affirmed the convictions.  The court summarized the evidence at trial, and concluded that the evidence supported both a finding that the police had probable cause to arrest Petitioner, and a finding that Petitioner voluntarily waived his Miranda rights and voluntarily gave his various statements.  The appellate court further found that the trial court did not abuse its discretion in finding that it was within the medical examiner's expertise to opine on whether Gallagher was probably sexually assaulted.  Resp. Ex. G.

## State Post-conviction Proceedings

Petitioner filed a pro se motion for post conviction relief pursuant to Missouri

Supreme Court Rule 29.15 on August 28, 2001. He raised numerous claims of ineffective assistance of counsel, including trial counsel's "[f]ailure to object and raise police and prosecution failure to preserve and retain fingerprints taken from the scene (bloody hand prints on wall) and police handwritten notes that were used as foundation for written reports." He argued that his oral confession supposedly came from the handwritten notes, and that as he "denied the oral statement," without the notes, the statement "should have all been inadmissible hearsay." Resp. Ex. K at 19.

On December 3, 2001, an amended motion was filed by appointed counsel, raising only the following two claims: (1) Petitioner received ineffective assistance from his trial attorneys in that they pressured him into giving up his right to a jury trial; and (2) Petitioner received ineffective assistance from appellate counsel in that counsel failed to argue on appeal that the evidence presented at trial was insufficient to support Petitioner's convictions. Id. at 41-48. On December 17, 2001, Petitioner filed a pro se motion to vacate the amended post-conviction motion, which, he stated, had been filed without his signature, verification, or approval. Petitioner asserted that he had instructed appointed counsel that he wanted her to include in the amended motion all the claims he had raised in his pro se motion, but that she explicitly refused to do so. Id. at 49-50.

A post-conviction evidentiary hearing was held at which Petitioner testified by telephonic deposition. He reiterated his complaint that post-conviction appointed counsel did not respect his wishes and instructions not to abandon the claims he raised in his pro se post-conviction motion. Petitioner also testified that his two trial attorneys met with

him numerous times before the trial and "always tried to get me to go along with a bench trial, which I told them, no, I didn't want to." Id. at 61-64. Petitioner stated that counsel told him they would be able to get some evidence in at a bench trial that might not be admitted in a jury trial, and that "chances were" that he would get a more favorable outcome from the judge than from a jury. He stated that this "greatly" influenced his decision to agree to a bench trial, that he felt pressured by counsel to do so, that they led him to believe that he would get a better result with a judge than with a jury, and that had he known he could get three life sentences, one without the possibility of probation or parole, he would have "just as soon gone to the death penalty." Id. at 64-66. With regard to appellate counsel, Plaintiff testified that he asked counsel to raise an insufficiency-of-the-evidence claim, but that counsel did not do so. Id. at 67.

Petitioner's two trial attorneys testified, essentially consistently, that they advised and possibly "urged" Petitioner to accept the waiver deal, because it meant the removal of the death penalty, but that they did make any promises or guarantees beyond what was in the written waiver agreement. They testified that they did not tell Petitioner that evidence might be admitted in a bench trial that would not be admitted in a jury trial. They also testified that the state's offer not to seek the death penalty if Petitioner waived a jury trial was made only approximately two weeks before the trial date, and that Petitioner had to make his decision within one or two days from when he was presented with the offer. Resp. Ex. J at 17-43. Appellate counsel testified that he thought the evidence admitted at trial, including Petitioner's confessions and the medical examiner's testimony, was

sufficient to support all three convictions, and so he did not raise an insufficiency-of-the-evidence claim on appeal.  Id. at 4-16.

The motion court held that it had no duty under Missouri law to respond to claims that were in Petitioner's pro se post-conviction motion but not included in the amended motion.  The court then concluded that Petitioner's written waiver of a jury trial, the testimony of defense counsel at the post-conviction hearing, and Petitioner's own deposition testimony showed that Petitioner was not "misled, coaxed, promised or guaranteed anything" by his trial attorneys that caused him to involuntarily, unknowingly, or unintelligently waive his right to a jury trial.  Resp. Ex. K at 88-90.  The motion court also concluded that Petitioner was not prejudiced by appellate counsel's failure to raise an insufficiency-of-the-evidence argument, as it was apparent that the Missouri Court of Appeals considered all the evidence and found it sufficient in light of the verdict. Furthermore, appellate counsel's testimony at the post-conviction hearing made it apparent that it was a strategic decision not to pursue an insufficiency-of-the-evidence argument, and this decision was not outside the wide range of professionally competent assistance.  In sum, the court concluded that Petitioner failed to show that either trial or appellate counsel's representation fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466 U.S. 668 (1984), or that he was prejudiced by their representation.  Resp. Ex. K at 90-91.

On appeal, Petitioner, still represented by the same appointed counsel, raised only the two claims presented in the amended motion and addressed on the merits by the

12

motion court, namely the claims of ineffective assistance of counsel with respect to the waiver of a jury trial and the sufficiency of the evidence. With regard to the first claim, Petitioner alleged for the first time that his waiver was coerced because he was only granted 24 to 48 hours to make his decision. Resp. Ex. L.

The Missouri Court of Appeals affirmed the trial court's denial of post-conviction relief, applying the standard set forth in Strickland (holding that to constitute ineffective assistance of counsel under the Sixth Amendment, counsel's performance must have fallen below an objective standard of reasonableness, and such performance must have prejudiced the defendant in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). The appellate court found that the motion court's finding that Petitioner's waiver of a jury trial was not coerced by trial counsel was not clearly erroneous, and that Petitioner's claim on this matter was "not based on any credible evidence." The appellate court refused to consider Petitioner's new allegations about the limited time he was given to make his decision. Lastly, the appellate court concluded that Petitioner failed to prove that he was prejudiced by his appellate counsel's strategic decision not to make an insufficiency-of-the-evidence argument. Resp. Ex. N.

## DISCUSSION

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68(1991). As noted above, Petitioner raises essentially five

grounds for federal habeas relief:

> His oral, written, and videotaped confessions were improperly admitted at trial because they were obtained following his arrest which was effected without a warrant, probable cause, exigent circumstances, or knocking and announcing;

> The State destroyed fingerprint evidence and police notes of his interrogation, despite pending motions by the defense to preserve such evidence;

> His confessions were improperly admitted at trial because they were not voluntary, but coerced by the police;

> His waiver of his right to a jury trial was not voluntary, but rather was coerced by his trial attorneys; and

> There was insufficient evidence to support his convictions and direct appeal counsel was ineffective for not raising this claim on appeal.

## Non-cognizable Claims

Respondent correctly argues that Petitioner's claims challenging the admission of evidence based upon his allegedly unconstitutional arrest, are not cognizable in this action. Such Fourth Amendment claims may be raised in a federal habeas action only if "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Willett v. Lockhart, 37 F.3d 1265, 1273 (8th Cir. 1994) (citing Stone v. Powell, 428 U.S. 465, 494 (1976)); see also Palmer v. Clarke, 408 F.3d 423, 437 (8th Cir. 2005) (same). Here, there is no suggestion that Petitioner did not have a full and fair opportunity to litigate his Fourth Amendment claims or that the state trial court did not give fair consideration to these claims in denying

Petitioner's motion to suppress his statements. These claims are thus "Stone-barred." See Willet, 37 F.3d at 1273.

**Procedural Default**

Respondent argues that this Court is procedurally barred from considering the merits of Petitioner's habeas claims that (1) the police wrongfully destroyed fingerprint evidence and the handwritten notes of the interrogating officers, and (2) there was insufficient evidence to convict him. Respondent asserts that these claims were procedurally defaulted in state court due to Petitioner's failure to raise them on direct appeal or in the post-conviction appeal.

Petitioner replies that he attempted to raise in his post-conviction motion a claim that trial counsel was ineffective for failing to challenge the destruction of the fingerprints and police notes. He asserts that such ineffectiveness constitutes cause to excuse the procedural default, and prejudiced him. Petitioner argues that the police notes "would show that petitioner did not make an oral statement and had in fact asked for an attorney, and to use the phone on several occasions." Pet. Traverse at 28. He also asserts that "the prosecution should of known that the defense would at least want to see the fingerprints for themselves and may have changed the outcome of the trial"; that had the prosecutor not allowed the fingerprints to be destroyed, Petitioner would not have agreed to a bench trial; and that failure to consider the destruction of evidence claim would result in a "fundamental miscarriage of justice." Id. at 29-30. With respect to the insufficiency of the evidence claim, Petitioner clarifies in his traverse that his habeas claim is that direct

appeal counsel was ineffective for failing to raise the matter on direct appeal. This ineffective-assistance claim, Petitioner points out, was not procedurally defaulted. Id. at 46-47.

Under the doctrine of procedural default, where a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) actual innocence, such that failure to address the claim would result in a miscarriage of justice. Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) (citing Murray v. Carrier, 477 U.S. 478, 493-96, (1986)). The doctrine applies alike whether the default occurred at trial, on appeal, or on state collateral attack, Murray, 477 U.S. at 490-92; Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (stating that in Missouri, a claim must be presented at each step in the judicial process in state court to avoid a procedural default).

Ineffective assistance of trial or direct appeal counsel can constitute cause for a default, but only where such an ineffective-assistance claim was itself presented to the state appellate court as an independent claim. Edwards v. Carpenter, 529 U.S. 446, 453 (2000); Interiano v. Dormire, 471 F.3d 854, 857 (8th Cir. 2006); Clemons, 381 F.3d at 752. In order for deficient trial or appellate work to constitute cause to excuse a procedural bar, counsel must have been constitutionally ineffective under Strickland, 466 U.S. at 687-88. Clemons, 381 F.3d at 752.

To show actual innocence and a miscarriage of justice to excuse a procedural default requires "new reliable evidence" that was not presented at trial and that makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 126 S. Ct. 2064, 2076-77 (2006) (citation omitted); see also Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir.), cert. denied, 127 S. Ct. 590 (2006).

With respect to the insufficiency-of-the-evidence claim, Petitioner asks the Court to construe this as a claim that appellate counsel was ineffective in failing to raise an insufficiency-of-the-evidence claim on direct appeal. Such an ineffective-assistance claim was not procedurally defaulted, and the Court will, accordingly, address it below, together with the other claims that are addressed on the merits.

With respect to the destruction-of-evidence claim, as Respondent argues, the claim was not raised on direct appeal. Thus the claim was procedurally defaulted. However, a claim that trial counsel was ineffective for not complaining about the destruction of the evidence was raised by Petitioner in his pro se post-conviction motion. This ineffective-assistance claim was not included in the amended motion filed by appointed counsel. The record establishes that Petitioner asked appointed counsel to include it (and all other claims in the pro se motion) in the amended motion, but counsel refused to, at which point Plaintiff asked the motion court to vacate the amended motion and proceed on the original pro se motion. The same appointed attorney who filed the amended motion pursued the appeal from the denial of that motion, so it is no surprise that the omitted claim was not raised in that appeal. There is some authority for concluding that under

these circumstances, Petitioner should be allowed to argue now that trial counsel's ineffectiveness excuses the procedural default at issue. Cf. Clemmons v. Delo, 124 F.3d 944, 948 (8th Cir. 1997). Rather than decide this question, the Court will address the easier issue of the merits of Petitioner's ineffective-assistance claim as cause to excuse the procedural default of the due process destruction-of-evidence claim. See Stephens v. Norris, 83 F.3d 223, 224 (8th Cir. 1996) (a federal district court may by-pass a procedural default question and proceed to the merits, where the merits are more easily resolvable against a petitioner).

Petitioner argues that the fingerprint evidence was destroyed before his own expert could examine them and compare them to Petitioner's, and that the handwritten notes would have shown that during his interrogation, Petitioner several times asked for an attorney and to use the phone. To establish a due-process violation when a state destroys evidence that is "potentially useful," as opposed to "materially exculpatory," to a criminal defendant, the defendant must show that the state acted in bad faith. Illinois v. Fisher, 540 U.S. 544, 547-48 (2004) (per curiam); Morales v. Ault, 476 F.3d 545, 555 (8th Cir. 2007). Here the evidence in question was at best potentially useful to Petitioner. The record demonstrates that the fingerprint evidence consisted of prints lifted at the crime scene that were identified as belonging to the victim or that were insufficient for identification purposes, and that the police discarded the prints in accordance with normal police procedure. Nothing indicates that this was done in bad faith. Similarly, there is no suggestion of bad faith with respect to the handwritten notes. Nor is it clear that the prints

or handwritten notes were disposed of after Petitioner filed a motion to preserve evidence.[3]  In any event, the Court believes that the record is sufficient for a conclusion that Plaintiff was not deprived of the effective assistance of trial counsel in this regard so as to excuse the procedural default that occurred.

The Court accordingly turns to the merits of the claims that are cognizable in this action and that have been properly preserved for review.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  "AEDPA effected a move toward greater deference in the § 2254 courts' review of state-court decisions."  Brown v. Leubbers, 371 F.3d 458, 460 (8th Cir. 2004) (en banc).

The "contrary to" clause is satisfied if a state court has arrived "'at a conclusion opposite to that reached by [the Supreme Court] on a question of law'" or "'confronts facts

---

[3]  The Court notes that the copy of this motion provided by Petitioner is undated.  Pet. Ex. S-0.

that are materially indistinguishable from a relevant Supreme Court precedent'" but arrives at the opposite result. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 73 (2003) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413; <u>Linehan v. Milczark</u>, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it may have incorrectly applied federal law; the application must also be "unreasonable." <u>Williams</u>, 529 U.S. at 411; <u>Collier v. Norris</u>, 485 F.3d 415, 421 (8th Cir. 2007) <u>Colvin v. Taylor</u>, 324 F.3d 583, 587 (8th Cir. 2003) (under AEDPA, a writ of habeas corpus may not be granted "unless the relevant state court decision is <u>both</u> wrong <u>and</u> unreasonable"). The factual findings of the state court also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." <u>Kinder v. Bowersox</u>, 272 F.3d 532, 538 (8th Cir. 2001). "Factual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only by 'clear and convincing evidence.'" <u>Id.</u> (quoting § 2254(e)(1)).

## **Involuntary Confession**

Petitioner claims that the trial court should have suppressed his confession because it was involuntary. He asserts that he confessed only after the police overbore his will with threats and promises. A conviction based on an involuntary confession, obtained through police coercion, violates the Due Process Clause of the Fourteenth Amendment. <u>Colorado v. Connelly</u>, 479 U.S. 157, 163 (1986). The appropriate test for determining the

voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's "will [was] overborne and his capacity for self-determination critically impaired." Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." Colorado, 479 U.S. at 167.

"While a state court's resolution of factual issues is entitled to a presumption of correctness, the ultimate determination of whether a confession was voluntary presents a question of law." Smith v. Bowersox, 311 F.3d 915, 922 (8th Cir. 2002). "To determine whether a defendant's confession was voluntary, a court must consider the totality of the circumstances. These circumstances may include, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (citations omitted).

Here, the Court concludes that the state courts' determinations that Petitioner's confessions were admissible finds ample support in the record, and were thus not based on an unreasonable determination of the facts in light of the evidence presented. See Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) (a state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings, "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record"). It is undisputed that Petitioner was advised of his Miranda rights before the interrogation began at the police station and that he

voluntarily waived those rights. Approximately six hours later he confessed to the murder. And approximately eight hours after that, Petitioner confirmed at the start of the videotaping session that he had voluntarily initialed and signed the Advice of Rights form. Officer Lassing's testimony at the suppression hearing and at trial showed that during the six hours that Petitioner was questioned by the police until he gave his oral statement, he was given a breakfast and lunch break, and breaks as needed to use the bathroom. He was allowed cigarettes and soda, and was not questioned in a cell, but rather in a regular office, unhandcuffed. Lassing also testified that Petitioner did not ask for an attorney or that the questioning cease, and that no threats or promises were made induce the confession. Although Petitioner's version of the interrogation differed, the state courts were entitled to believe Lassing, and based on this testimony, the conclusion of voluntariness was not factually or legally unreasonable. See Perry v. Kemna, 356 F.3d 880, 886-87 (8th Cir. 2004) (holding that state courts' finding of voluntariness was reasonable as it was supported by an interrogating officer's testimony that no promises or threats were made to induce the petitioner's confession); White v. Helling, 194 F.3d 937, 940 (8th Cir. 1999) (same).

## **Involuntary Waiver of the Right to Trial by Jury**

Petitioner next argues that he was deprived of a fair trial because his waiver of a jury was involuntary. He asserts that his trial attorneys coerced him into agreeing to a bench trial rather than a jury trial. In the state courts, this issue was presented as a claim of ineffective assistance of trial counsel for coercing the waiver, but respondent does not

present a procedural default argument as to this matter. Although this Court has the discretion to consider an issue of procedural default sua sponte, see King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001), the Court declines to do so.

The right to a jury trial in criminal cases is a fundamental constitutional right. Duncan v. Louisiana, 391 U.S. 145, 157-58 (1968); Miller v. Dormire, 310 F.3d 600, 603 (8th Cir. 2002). Like other constitutional rights, a defendant may waive his right to a jury trial. Duncan, 391 U.S. at 158. For a waiver of a constitutional right "to be valid under the Due Process Clause, it must be an intentional relinquishment or abandonment of a known right or privilege." Boykin v. Alabama, 395 U.S. 238, 243 n. 5 (1969) (citation omitted).

Although the state courts addressed the issue of the voluntariness of Petitioner's waiver, in the context of an ineffective-assistance claim, this Court believes that the state courts' findings of voluntariness are entitled to the presumption of correctness under 28 U.S.C. § 2254(e)(1)), a presumption that Petitioner has failed to rebut by clear and convincing evidence. In any event, the Court concludes, based upon its own review of the record, that the testimony at the evidentiary hearing, coupled with Petitioner's written waiver, establishes that Petitioner's waiver of the right to a jury trial was voluntary. Petitioner himself testified that counsel told him that "chances were" he would get a more favorable outcome from the judge than from a jury. This is far from a guarantee. And the written waiver form belies Petitioner's current assertion that he was not aware that he could get life without parole, even following a bench trial. Furthermore, Petitioner obtained a significant benefit in return for his waiver -- the state's agreement to seek the death penalty.

Accordingly, this due process claim is without merit.[4]

## Ineffective Assistance of Appellate Counsel

Petitioner claims that he received ineffective assistance of appellate counsel for failing to raise a claim that the evidence was insufficient to support Petitioner's convictions. To prevail on this claim, Petitioner must show that counsel's performance was deficient, and that there is a reasonable probability that the result of the direct appeal would have been different if the argument had been made. See Smith v. Robbins, 528 U.S. 259, 285 (2000) (applying the two-part Strickland analysis to appellate counsel). In determining whether counsel's performance was deficient, the court should "indulge a strong presumption that [appellate] counsel's conduct falls within the wide range of reasonable professional assistance." Collins v. Dormire, 240 F.3d 724, 727 (8th Cir. 2001) (citing Strickland, 466 U.S. at 689).

> When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims. . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Smith, 528 U.S. at 288 (citations omitted); see also Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006).

---

[4]    Although not called upon to do so, the Court also concludes that the Missouri courts' adjudication of Petitioner's ineffective-assistance-of-trial-counsel claim is both factually and legally reasonable.

24

Moreover, in the context of a § 2254 petition, a Petitioner "must do more than show that he would have satisfied the <u>Strickland</u> test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly." <u>Underdahl v. Carlson</u>, 381 F.3d 740, 742 (8th Cir. 2004)(quoting <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002)).  "Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner."  <u>Id.</u>; <u>see also</u> <u>Scarberry v. Iowa</u>, 430 F.3d 956, 959 (8th Cir. 2005) (applying this standard of review to a claim that direct appeal counsel was ineffective), <u>cert. denied</u>, 126 S. Ct. 280 (2006).

Evidence is constitutionally insufficient to convict, only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  Here, the Court concludes that the state courts reasonably determined that even had appellate counsel raised the claim that the evidence was insufficient to support the convictions, there is no reasonable probability that the result of the direct appeal would have been different.  The evidence adduced at trial, namely, Petitioner's confessions, the state of undress of the victim's body, and the medical examiner's testimony that there probably had been a sexual assault, supports all the convictions in this case.  Moreover, the record supports the state court's determination that appellate counsel made a reasonable strategic decision not raise an insufficiency of the evidence claim as to any of the convictions.

**CONCLUSION**

For the foregoing reasons, the Court concludes that Petitioner is not entitled to habeas relief with regard to his convictions for murder in the first degree, armed criminal action, and attempted forcible rape. The Court also does not believe that "reasonable jurists" might find the Court's assessment of the procedural and substantive issues in this case "debatable or wrong," for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the petition of James D. Daughty for habeas corpus relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability should be denied on all claims.

The parties are advised that they have ten (10) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that the failure to file timely objections may result in a waiver of the right to appeal questions of fact.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of June, 2007.